UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HELLEX CAR RENTAL SYSTEMS, INC.,

               Plaintiff,

                    **MEMORANDUM AND ORDER**
   -against-                  Case No. CV-04-5580

DOLLAR SYSTEMS, INC., d/b/a DOLLAR
RENT A CAR and DOLLAR RENT A CAR,
INC.,

               Defendants.

-----------------------------------------------------------x

*Appearances:*

For the Plaintiff:  
RAYMOND A. CONNELL, Esq.  
132 Nassau Street, Suite 900  
New York, NY 10038

For the Defendants:  
STEVEN C. BENNETT, Esq.  
PATRICK G. BRODERICK, Esq.  
222 East 41st Street  
New York, NY 10017

**BLOCK, District Judge:**

  Plaintiff Hellex Car Rental Systems, Inc. ("Hellex") filed this diversity action against defendants Dollar Systems, Inc. and Dollar Rent a Car, Inc. (collectively, "defendants" or "Dollar"), alleging that Dollar breached its franchise agreement with Hellex by terminating Hellex's Dollar Car franchise. Dollar moves pursuant to 28 U.S.C. § 1404(a) to transfer the action to the United States District Court for the Northen District

1

of Oklahoma, or in the alternative, to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons set forth below, the Court grants Dollar's motion to transfer the action.[1]

I.

The relevant facts are not in dispute. Hellex is a New York Corporation whose president and majority shareholder is Nicolas Sinopoulos ("Sinopoulos"), a New York resident. In 1984 Sinopoulos individually entered into a number of agreements with Dollar for the operation of a Dollar car rental franchise in Brooklyn, New York (collectively, the "Franchise Agreement"), including a License Agreement. The License Agreement required Sinopoulos to "obtain and keep in full force and effect at all times during the term of this agreement policies of insurance covering public and property damage, with policy limits and provisions conforming to such requirements as [Dollar] may from time to time provide"; it also required Sinopoulos to support and participate in "all insurance programs of central procurement which Dollar Rent A Car may from time to time make available." License Agreement ¶¶ 2.5., 2.17. The License Agreement further provided that Dollar had the right to terminate the franchise on 30 days written notice in the event that Sinopoulos failed to fulfill his obligations pursuant to any provision or requirement contained in the License Agreement.

At the time Sinopoulos and Dollar entered into the License Agreement

---

[1] Because the Court determines that transfer is appropriate, it does not address the merits of Dollar's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Dollar's corporate headquarters were located in Los Angeles, California. The License Agreement contained a forum selection clause which provided that "[a]ll actions between the parties" would be litigated in district court in California, and that the district court would have "exclusive jurisdiction over the subject matter of this agreement and any dispute or disagreement arising out of said agreement." License Agreement ¶ 5.9.

In 1993 Dollar moved its corporate headquarters to Tulsa, Oklahoma. In 1994 Dollar consented to the assignment of the Franchise Agreement by Sinopoulos to Hellex. The consent took the form of a simple two page document plus signature page (the "Assignment Consent"), which incorporated by reference the terms of the License Agreement, as well as the other agreements constituting the Franchise Agreement. As stated in the Assignment Consent, Dollar's consent was simply conditioned on (1) all franchise fees being current; (2) representations by Sinopoulos that he had indeed assigned the Franchise Agreement to Hellex, and that he would at all times own at least a majority of the issued and outstanding stock in Hellex and retain operating control over the business, and (3) Hellex's agreement to "be bound by and . . . comply with all terms, conditions, covenants, provisions, obligations and agreements of the Assignor under the [franchise] Agreements, including. . . the License Agreement . . . ." Assignment Consent ¶1(d).

The Assignment Consent further provided that "[e]xcept as is specifically set forth herein, Assignee and Assignor each agree that this Consent to Assignment shall in no way alter, release, or diminish any of their respective obligations and/or liabilities

3

under any of the Agreements." *Id.* ¶ 5. Pertinent to the present litigation, the Assignment Consent contained the following choice of law and forum selection clause:

> The existence, validity, construction and sufficiency of performance of the Agreement shall be determined in accordance with and governed by the laws of the State of Oklahoma without giving effect to the conflicts of law provisions of such state. *Any suit, action or proceeding with respect to this Agreement* shall be brought exclusively in the Oklahoma state courts of competent jurisdiction in Tulsa County, Oklahoma or in the United States District Court in which the City of Tulsa is located. All parties hereby irrevocably waive any objections which they may now or hereafter have to the personal jurisdiction or venue of any suit, action or proceeding *arising out of* or *relating to this Agreement* brought in such Court and hereby further irrevocably waive any claim that such suit, action or proceeding brought in any such Court has been brought in an inconvenient forum. The parties hereby further irrevocably waive any right to a jury trial and any action arising out of or in connection with this Agreement or any other agreements by and among them or their respective affiliates.

*Id.* ¶ 6 (emphasis added).

According to Dollar, the majority of the Dollar representatives who dealt with Hellex during the term of the franchise are presently located in Oklahoma, and Oklahoma continues to be the location of the files and other documents required to manage Dollar's network of franchises, including the franchise owned by Hellex. *See* Affidavit of Mario E. Nargi, ¶¶ 17, 23.

In 1993, subsequent to Dollar's move to Oklahoma, Sinopoulos and Dollar entered into a second franchise agreement for the operation of a Dollar franchise, to be located in Queens, New York; this agreement, which remains operative, contained the same Oklahoma forum selection clause as in the Assignment Consent. Pl. Mem. at 4-5.

Following the 1994 assignment to Hellex of Sinopoulos's interest in the Brooklyn franchise, Hellex participated in an insurance program offered by Dollar. In 2001, Dollar determined that it would no longer offer this insurance program to its New York franchisees, and after Hellex was unable to obtain replacement insurance, terminated the franchise. Hellex thereupon filed the present suit against Dollar, asserting that Dollar had excluded Hellex from its insurance program for the sole purpose of creating a default to allow Dollar to terminate its franchise with Hellex, and alleging that this action constituted an arbitrary exercise of the discretion granted to Dollar under the License Agreement.

In opposition to Dollar's motion to transfer, Hellex argues that the Oklahoma forum selection clause applies only to breaches of the Assignment Consent and not to breaches under the License Agreement, contending that since Hellex's action alleges a breach of the rights and responsibilities set forth in the underlying License Agreement, it is not an action "with respect to" the Assignment Consent, but only an action arising out of the License Agreement, containing the California forum selection clause.[2] Alternatively, Hellex argues that the Oklahoma forum selection clause should not be enforced because the Assignment Consent fails to reserve to Hellex the protections granted to franchisees by the New York Franchise Law, N.Y. Gen. Bus. Law § 681 *et seq.*, thereby violating New York public policy.

---

[2]Hellex does not request that the forum selection clause in the License Agreement be enforced; it argues that the Court should simply refuse to give operation to the Oklahoma forum selection clause and defer to Hellex's choice of New York as the most convenient venue for the litigation.

II.

## A. Applicability of the Forum Selection Clause in the Assignment Consent

Hellex's argument that the forum selection clause in the Assignment Consent does not encompass the present dispute is without merit.

A forum selection clause included in a consent to an assignment rather than in the underlying contract may nonetheless encompass disputes relating to the subject matter of the underlying obligations assumed by an assignee. *See Mendes Junior Int'l Co. v. Brasil, S.A.*, 15 F. Supp.2d 332, 336 (S.D.N.Y. 1998) (forum selection clause in agreement whereby plaintiff assigned its claims against third party to defendant was not "insignificant" or "collateral" to the primary agreements between plaintiff and defendant and would apply to suit alleging that defendant failed to pursue plaintiff's claims against third party); *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 2004 WL 2360033 at *7 n.7 (observing that "[a] forum-selection clause contained in an assignment agreement – rather than in the underlying promissory agreement – may nevertheless apply to all claims arising out of that underlying agreement"); *Bank of America v. Private Trust Corp. Ltd.*, 1998 WL 230991 at *4 (S.D.N.Y. May 6, 1998) (holding that a forum selection clause in an assignment agreement would apply where "the issue furnishing the sole basis for obtaining the [delaratory judgment sought] is raised only by the transfer of the [underlying asset], as set forth in the Assignment Agreement").

In *Bank of America*, for example, plaintiff and defendant were parties to a Trust Agreement which outlined the circumstances under which plaintiff would be responsible for indemnifying defendant. Fearing liability in connection with defects in a debt instrument assigned to plaintiff by defendant, plaintiff brought a declaratory

6

judgment action to determine its liability to defendant under the terms of the Trust Agreement. In upholding the forum selection clause in the assignment agreement, the court rejected defendant's argument that plaintiff's action did not arise out of that agreement, noting that the plaintiff's claim was "necessarily and inescapably dependent on its purchase of the [debt instrument] from [defendant]," and that "because it is the Assignment Agreement through which the parties effected the sale of the [instrument], and not the Trust Agreement, the former agreement must relate to this action, whether or not the latter does as well. In other words, [plaintiff] could not press its declaratory judgment action on the basis of the Trust Agreement alone . . . ." *Id.*

In *Anselmo v. Univision Station Group, Inc.*, the court observed:

> The [forum selection] clause [at issue] contains the phrase 'relating to' which is broad enough to encompass claims not explicitly grounded in the Agreement. Thus, each remaining claim in the plaintiff's Amended Complaint must be evaluated in light of the clause. A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of these claims is a breach of that relationship.

1993 WL 17173 at *2 (S.D.N.Y. Jan. 15, 1993) (quoting *Bense v. Interstate Battery System, Inc.*, 683 F.2d 718, 720 (2d Cir. 1982).

In the present case, the assignment provides that "[a]ny suit, action or proceeding *with respect to*" the Assignment Consent must be brought in Oklahoma, and that the parties waive all objections to venue in "any suit, action or proceeding *arising out of* or *relating to*" the Assignment Consent "or any other agreements by and among" all the parties. Assignment Consent ¶ 6 (emphasis added). Hellex's action against Dollar for

7

breach of the franchise agreement is an action "with respect to" this assignment because the existence of Hellex's claim is dependent upon its succession to the rights, responsibilities and obligations under the original franchise agreement between Sinopoulos and Dollar, which was effected through the Assignment Consent. Moreover, it is the Assignment Consent that gives Hellex standing to bring suit against Dollar; like the plaintiff in *Bank of America*, Hellex was not a party to the underlying License Agreement and could not pursue the present action "on the basis of the [License Agreement] alone." *Bank of America*, 1998 WL 230991 at *4.

In sum, the Assignment Consent was simply a basic assumption by Hellex of all of Sinopolous' rights, obligations and responsibilities under the Franchise Agreement, and the new forum selection clause clearly attached to the resolution of such rights. It is at once apparent that the change of forum in the Assignment Consent from California to Oklahoma, which was the only substantive modification to the underlying Franchise Agreement contained in the Assignment Consent, was simply designed to reflect the change in the location of Dollar's corporate headquarters, and not, as Hellex would have it, to afford it the right to litigate disputes arising from the parties' underlying contractual rights in New York; indeed, this reality is borne out by the Oklahoma forum selection clause in the franchise agreement that Dollar entered into with Sinopoulos for the Queens franchise after Dollar had moved to Oklahoma.

**B. Enforceability of the Forum Selection Clause**

"It is well-established that [forum selection] clauses will be enforced unless it clearly can be shown that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Karl Koch Erecting Co. v. New*

*York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988) (internal quotation marks and citations omitted). In determining whether a clause is unreasonable, a court should consider whether

> [1] . . . the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum . . .; [2] . . . the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy . . .; [3] . . . the clause[] contravene[s] a strong public policy of the forum state.

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (quotation marks and citations omitted). Hellex does not argue that the clause was the result of fraud or overreaching, but asserts that it is unreasonable because it does not reserve to Hellex the protections provided by New York Franchise Law, and that the "unqualified designation of the law of a foreign state as the law governing franchise agreements subject to the New York Franchise Act is not permitted under the public policy of the State of New York." Pl. Mem. at 13. This argument fails for two reasons. First, the failure of the Assignment Consent to explicitly reserve to Hellex the protections provided by New York franchise law is irrelevant to a determination regarding the enforceability of the forum selection clause. The substantive law applicable to Hellex's action is not presently at issue, and any restrictions New York may place on the law to be applied to the underlying franchise dispute is distinct from the parties' ability to contract for the place where the action must be brought.

Furthermore, the argument that New York franchise law prevents parties from designating a forum other than New York is entirely without support. As observed in the commentary to the Franchise Act, "the principle that franchise agreement forum

9

selection clauses will be given great deference and enforced absent impropriety such as fraud or coercion" in franchise disputes involving New York franchisees has recently been reinforced. David J. Kaufmann, Practice Commentaries to New York Franchise Act, N.Y. Gen. Bus. Law § 681 et seq. at 79 (McKinney 2005 Cumulative Pocket Part) (citing *G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*, 2004 WL 1110423 at *4 (S.D.N.Y. May 19, 2004). Because a determination regarding the enforceability of the forum selection clause does not require the Court to consider the appropriate substantive law to be applied to the parties' dispute, and because there is no support for the argument that New York franchise law precludes New York franchisees from agreeing to litigate disputes in other fora, the designation of law other than that of New York to the parties' franchise dispute does not render the parties' choice of forum unreasonable.

A valid and enforceable forum selection clause "is not dispositive as to a transfer under § 1404(a),"[3] *Falconwood Financial Corp. v. Griffin*, 838 F. Supp. 836, 840 (S.D.N.Y. 1993) (citing *Stewart Organization, Inc., v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1998), and a court considering whether to grant a motion to transfer under § 1404(a) must "'take account of factors other than those that bear solely on the parties' private ordering of their affairs,' such as the convenience of witnesses and ... other factors."*Mpower Communications Corp. v. Voipld.com, Inc.*, 304 F. Supp. 2d 473, 475 (W.D.N.Y. 2004) (quoting *Stewart*, 487 U.S. at 30); however, a party's "expressed preference for a forum in a forum selection clause is entitled to substantial consideration," and the party opposing application of a valid clause

---

[3]28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

must "demonstrate exceptional facts explaining why he should be relieved from his contractual duty"). *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992). *See also Haskel v. FPR Registry, Inc.*, 862 F. Supp. 909, 916 (E.D.N.Y. 1994) ("Although plaintiff's choice of forum would normally be given deference, once a mandatory forum selection clause is determined to be valid, the plaintiff bears the burden of showing why the contractual provision should not be enforced.").

Hellex has failed to offer any persuasive argument why it should be relieved of its contractual duty to litigate the present suit in Oklahoma. It is entirely reasonable for Dollar to require that its franchisees agree to litigate disputes arising from the franchise relationship in Oklahoma, where its corporate headquarters are housed, rather than be required to defend suits in every state where its franchises may be located. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (recognizing that a business which may potentially be subject to suit in many locales has a legitimate interest in "limiting the fora in which it potentially could be subject to suit"). Although Hellex argues that it is more convenient to litigate the dispute in New York, it can only be said that New York is a more convenient forum for Hellex and Oklahoma is the more convenient forum for Dollar; however, Hellex has not demonstrated that any additional expense or inconvenience it may incur in traveling to Oklahoma to litigate the dispute would render trial "'in the contractual forum . . . so gravely difficult that plaintiff will be denied his day in court.'" *Bense*, 683 F.2d at 722 (citation omitted). Since Hellex has not presented any extraordinary facts that would justify a refusal to hold Hellex to its agreed-upon forum selection clause, the Court will enforce the clause.

## CONCLUSION

The Court grants Dollar's motion to transfer the action.

**SO ORDERED.**

_____
FREDERIC BLOCK
United States District Judge

Brooklyn, New York
November 7, 2005